6807

GERATY v. ATLANTIC COAST LINE R. R. CO.

CORPORATIONS—RAILROADS—ESTOPPEL.—Where two railroad corporations, having corporate residence in different States, merge into one corporation in this State and voluntarily file the certificate of charter with the Secretary of State, as required by the State statutes, and are doing business as such corporation in the State, the new incorporation is estopped from contending it is not a domestic corporation and must be regarded a citizen of this State.

Before GARY, J., Charleston, August, 1907.    Affirmed.

Motion in case of W. C. Geraty against Atlantic Coast Line Railroad Company, incorporated under laws of South Carolina, and same company incorporated under laws of Virginia, to set aside service of summons on the first named corporation.   The order of the Circuit Court, in refusing the motion, is as follows:

"The defendant made a motion before me to set aside the service of the summons herein, on the ground that the defendant is not a corporation organized under the laws of the State of South Carolina, as alleged in the complaint.

"The view which I take of the question involved renders unnecessary the consideration of the numerous phases of the law, discussed by counsel.

"Art. IX, section 8, of the Constitution of South Carolina is as follows: "The General Assembly shall not grant to any foreign corporation or association a license to build, operate or lease any railroad in this State; but in all cases where a railroad is to be built or operated, or is now being operated in this State, and the same shall be partly in this State and partly in another State, or in other States, the owners or projectors thereof shall first become incorporated under the laws of this State; nor shall any foreign corporation or association lease or operate any railroad in this State, or purchase the same or any interest therein.   Consolidation

of any railroad lines and corporations in this State with others shall be allowed only where the consolidated company shall become a domestic corporation of this State. No general or special law shall ever be passed for the benefit of any foreign corporation, operating a railroad under an existing license of this State, or under any existing lease, and no grant of any right or privilege, and no exemption from any burden shall be made to any such foreign corporation, except upon the condition that the owners or stockholders thereof shall first organize a corporation in this State, under the laws thereof, and shall thereafter operate and manage the same and the business thereof, under said domestic charter.'

"The Atlantic Coast Line Railroad Company (which was incorporated under the laws of Virginia) and the Savannah, Florida and Western Railway Company entered into articles of agreement for the consolidation and merger of the said companies; and the said articles of agreement were confirmed by the stockholders of each of said companies, at separate meetings, held in pursuance of law and after due notice.

"The stockholders of each of said companies, at their respective meetings, adopted a resolution 'That the State of South Carolina be requested to issue to Henry Walters, Warren G. Elliott, James J. Lucas, and Christopher S. Gadsden, and such other persons as may be, or hereafter may become associated with them as the owners and stockholders of the merged, united and consolidated company and their successors, a charter, as a merged, united and consolidated body, politic and corporate, in perpetuity, under the name of the Atlantic Coast Line Railroad Company, having, possessing, holding and enjoying, each, every, and all of the rights, powers, privileges, immunities, and franchises of every nature whatsoever, set forth in such articles of agreement and consolidation, and each, and every, and all of the rights, powers, privileges, immunities, and franchises of every nature whatsoever granted to, held, pos-

sessed, or enjoyed by each of the constituent corporations, merging, uniting and consolidating into the Atlantic Coast Line Railroad Company, not in conflict with the terms and provisions of said articles of agreement and consolidation.'

"These facts are set forth in the certificates of the secretaries of said companies, filed with the Secretary of State when application was made for a charter, embodying the foregoing provisions, which was duly issued by the Secretary of State on the 13th of May, 1902.

"Chapter XLIV of the Code of Laws sets forth the conditions upon which foreign corporations are permitted to do business in this State.

"Section 1793 of said chapter provides that 'When a foreign corporation complies with the provisions and requirements of this chapter, it shall *ipso facto* become a domestic corporation, and shall enjoy the rights and be subject to the liabilities of such domestic corporations; it may sue and be sued in the courts of this State, and shall be subject to the jurisdiction of this State, as fully as if it were originally created under the laws of the State of South Carolina.'

"Section 1794 makes it unlawful for any foreign corporation to do business, or attempt to do business in this State, without first having complied with the requirements of said chapter, and provides a punishment for violation of said provisions.

"It is not denied that the defendant is operating its road in this State.

"In 13 Enc. of Law, 895, it is said: 'When a foreign corporation avails itself of the privilege of doing business in a State whose laws authorize it to be sued there, by service or process on an agent, its assent to such service will be implied. It waives the right to object to the mode of service of process, which the State law authorizes. The fact that it has not complied with the State law requiring it to appoint and designate an agent for service of process is wholly immaterial.

" 'It is estopped by its action from denying that it has complied with this requirement.'

"The defendant is, therefore, estopped from contending that it is not a domestic corporation, for if it is not, then the operation of its railroad in this State is unlawful.

"Public policy demands that the defendant under these circumstances should be regarded as a domestic corporation.

"From the fact that it is doing business in this State the presumption arises that it has complied with the conditions upon which it was lawful for it to operate its railroad.    1 Elliott on Evidence, section 106 ; 22 Enc. of Law, 1280.

"The motion is therefore refused."

From this order both defendants appeal.

*Messrs. W. Huger FitzSimons, T. M. Mordecai* and *Simeon Hyde,* for appellants.    *Messrs. Mordecai* and *Hyde* cite:    *The consolidation of these companies did not result in a South Carolina corporation, but in a domesticated Virginia corporation:*    64 S. C., 139, 162 ; 48 S. C., 58 ; 118 U. S., 290 ; 190 U. S., 326 ; 104 F. R., 377 ; 124 F. R., 358 ; 151 U. S., 673 ; 161 U. S., 545 ; 205 U. S., 236 ; 30 Penn., 42.

*Messrs. Legare, Holman & Baker,* con|tra, cite : *A railroad company incorporated in several States is a citizen of all:*    136 U. S., 375 ; 94 U. S., 444.    *The consolidated corporation is a citizen of the State where consolidated corporation is made:*    45 Fed. R., 812 ; 198 U. S., 177.

The opinion in this case was filed on March 18, 1908, but remittitur held up on petition by appellants stating a determination to take the case by writ of error to United States Supreme Court.    The Reporter has concluded to publish the opinion, as in any event that would be the course here, but the removal has not been completed at this date.

May 29, 1908. The opinion of the Court was delivered by

MR. JUSTICE GARY. The facts are stated in the order of his Honor, the Circuit Judge, which will be set out in the report of the case.

This Court deems it only necessary to add one or two reasons to those assigned by the presiding Judge, in refusing the motion.

Since the motion was refused, the United States Supreme Court has rendered a decision, in the case of *Patch* v. *Wabash R. R. Co.*, 28 Sup. Ct. Rep., 80, announcing the principle that a corporation existing under and by virtue of the laws of several States, including the one in which the action is commenced, must be regarded as a citizen of the latter State, for the purpose of determining its right to remove the cause to a Federal Circuit Court.

The facts are thus stated in the opinion: "This was an action brought by the plaintiff in error to recover for the death of his intestate in a collision upon the defendant's railroad in Illinois. The action was begun in a court of the State, and the defendant forthwith filed a petition for the removal of the cause to the United States Circuit Court. The petition averred, among other things, that the defend·ant was a corporation organized under the laws of Ohio, and a citizen of that State, and was not a resident of Illinois, and that the plaintiff was a citizen and resident of Illinois. The removal was ordered and completed. Thereupon the plaintiff filed in the United States Court a plea, in which he alleged that the defendant was a corporation organized and existing under and by virtue of the laws of Illinois, Missouri, Indiana, Michigan and Ohio, by the consolidation of five other corporations, severally created by the laws of those States respectively; that the defendant was a citizen of and resident in Illinois and each of said other States, and that the plaintiff was a citizen of Ohio; and the

plaintiff prayed judgment whether the Court could take cognizance of the action."

In that case the Court uses this language: "The defendant exists in Illinois, by virtue of the laws of Illinois. It is alleged to have incurred a liability, under the laws of the same State, and is sued in that State. It cannot escape the jurisdiction by the fact that it is incorporated elsewhere. The assent of the State to such incorporation elsewhere, supposing it to have been given—a matter upon which we express no opinion—cannot be presumed to have intended or to import such a change! * * * What would be the law in case of a suit brought in Illinois upon a cause of action which arose in Ohio is a question that may be left on one side, as also may be the decisions in cases where a corporation, originally created in one State, afterwards becomes compulsorily a corporation of another State, for some purposes, in order to extend its powers. *Southern R. Co.* v. *Allison,* 190 U. S., 326, 47 L. Ed., 1078; 23 Sup. Ct. Rep., 713; *St. Louis & S. F. R. Co.* v. *James,* 161 U. S., 545; 40 L. Ed., 802; 16 Sup. Ct. Rep., 621. In the case at bar the incorporations must be taken to have been substantially simultaneous and free. See *Memphis & C. R. Co.* v. *Alabama, supra.* If any distinction were to be made it hardly could be adverse to the jurisdiction of Illinois, in view of the requirements of its Constitution and statutes, that a majority of the directors should be residents of Illinois, and that the corporation should keep a general office in that State. We are of opinion that the defendant must be regarded in this suit as a citizen of Illinois, and, therefore, as having had no right to remove."

Section 1791 of the Code of Laws is as follows: "Each and every railroad company or railroad corporation, created or organized under and by virtue of any government other than that of this State, desiring to own property or carry on business, or exercise any corporate franchise in this State, of any kind whatsoever, shall first file, in the

office of the Secretary of State, a copy of its charter, paying therefor such fees as may be required by law, and, in addition thereto, a fee equal to one-tenth of one per centum upon the authorized capital stock of such company or corporation. and cause a copy of such charter to be recorded in the office of the register of mesne conveyance or clerk of court of common pleas in each county in which such company or corporation desires or proposes to carry on its business, or to acquire or own property. Such copy of the charter shall be authenticated in the manner directed by law for the authentification of the statutes of the State or country under whose laws such corporation is chartered or organized."

In the case of *Southern Railway* v. *Tompkins,* the Court announced that "the mode by which foreign corporations might become domestic corporations was left to the Legislature, which could either require an application for a charter under the laws of this State, or could prescribe terms upon which a foreign corporation would be *adopted as a domestic corporation."*

It will thus be seen that the consolidation of the several corporations and the petition for a charter were not compulsory in order to enable the appellant to extend its powers, and that even if the right of removal was involved it could not be granted.

The authorities principally relied upon by the appellant relate to the right of removal, which is not involved.

But whether the foreign corporation is incorporated as a domestic corporation, when it accepts a charter, or files a copy of its charter, granted by another State, with the Secretary of State, it has not been denied that it becomes a domestic corporation for all purposes except Federal jurisdiction. *Southern Ry.* v. *Tompkins,* 48 S. C., 49, 25 S. E., 982; *Calvert* v. *Ry.,* 64 S. C., 139, 41 S. E., 963; Black's Dillon on Removal of Causes, section 101.

It is the judgment of this Court that the order of the Circuit Court be affirmed.

MESSRS. JUSTICES JONES AND WOODS *concur in the result,* and express no opinion as to right of removal to Federal Court, since such question is not involved.